**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF WISCONSIN**
**MILWAKEE DIVISION**

| | |
|---|---|
| KEEFE JOHN, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>GENERAL MOTORS LLC,<br><br>Defendant. | Case No: 2:25-cv-914<br><br>**CLASS ACTION COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff Keefe John ("Plaintiff") brings this class action lawsuit individually and on behalf of all others similarly situated, by and through undersigned counsel, and hereby alleges the following against Defendant General Motors LLC ("GM" or "Defendant"). Facts pertaining to Plaintiff and his experiences and circumstances are alleged based upon personal knowledge, and all other facts alleged herein are based upon investigation of counsel and—where indicated—upon information and good faith belief.

## NATURE OF THE ACTION

1.    Plaintiff brings this class action lawsuit to hold Defendant accountable for selling hundreds of thousands of Class Vehicles[1] containing a potentially deadly engine defect, placing countless lives at risk, and depriving Plaintiff and Class Members of the warranted value of their vehicles.

2.    The performance of GM's L87 Engine, which is installed in each Class Vehicle,

---

[1] The Class Vehicles are GM vehicles installed with the L87 6.2L V8 engine (the "L87 Engine"). On information and belief, the L87 Engine is found in the following GM vehicles: 2019-2024 Chevrolet Silverado 1500; 2021-2024 Chevrolet Tahoe; 2021-2024 Chevrolet Suburban; 2019-2024 GMC Sierra 1500; 2021-2024 GMC Yukon; 2021-2024 GMC Yukon XL; 2021-2024 Cadillac Escalade; and 2021-2024 Cadillac Escalade ESV.

1

depends on the integrity of its internal components, particularly the crankshaft, connecting rods, and engine bearings. However, GM concealed for years that the bearings in their L87 Engines are prone to experience failure, resulting in the connecting rod breaching the engine block and/or engine seizure (the "Engine Defect").

3.     The Engine Defect renders the Class Vehicles unsafe and unreliable. Class Vehicles may experience engine failure resulting from the Engine Defect at any time during the operation of the vehicle. This is particularly dangerous when engine failure occurs while the Class Vehicle is traveling at high speeds due to the increase of the risk of a crash.

4.     Following an investigation conducted by the National Highway Traffic Safety Administration (the "NHTSA") concerning the Engine Defect, GM issued a safety recall in which it admitted the existence of the Engine Defect and the possibility that the Engine Defect can result in crashes and injuries (the "2025 Recall").

5.     But the purported "remedies" offered in the 2025 Recall are woefully inadequate. These remedies do nothing to address the root cause of the Engine Defect, leaving Plaintiff and Class Members at risk of experiencing engine failure and potential physical injury. Nor do these purported remedies compensate Plaintiff and the Class Members for the actual and anticipated losses they experience as a result of GM selling them Class Vehicles that GM knew contained the Engine Defect.

6.     Had GM fulfilled its duty to disclose the Engine Defect, Plaintiff and the Class Members would not have purchased a Class Vehicle.

7.     As a result of Defendant's unfair, deceptive, and/or fraudulent business practices, owners and/or lessees of the Class Vehicles, including Plaintiff and the Class Members, have suffered an ascertainable loss of money and/or property, including the loss of value of their Class

Vehicles, the loss of use of their Class Vehicles, and increased costs to operate the Class Vehicles.

8.     Accordingly, Plaintiff brings this action to redress Defendant's misconduct and seeks actual damages, disgorgement of GM's profits from fraudulent sale of Class Vehicles, and injunctive relief.

## PARTIES

### A. Plaintiff

9.     Plaintiff Keefe John is a resident of Washington County in the State of Wisconsin. Plaintiff John purchased a 2023 GMC Sierra 1500 from Lynch Chevrolet Buick GMC located at 2300 Browns Lake Drive, Burlington WI 53105 in or around May 12, 2023.

10.    Lynch Chevrolet Buick GMC is part of GM's network of authorized dealers across the United States.

11.    Plaintiff John purchased his Class Vehicle because he believed that the vehicle was safe, reliable, and of the highest quality.  At no point before Plaintiff John purchased his vehicle did GM disclose that his Class Vehicle suffered from the Engine Defect, which may result in catastrophic engine failure and places drivers and passengers at risk of physical injury.

12.    Had GM disclosed the Engine Defect prior to Plaintiff John's purchase of his Class Vehicle, Plaintiff John would not have purchased his Class Vehicle.

13.    When Plaintiff John purchased his Class Vehicle, it included GM's manufacturer warranty.

14.    In May 2025, Plaintiff John received a notification from GM stating that his Class Vehicle was subject to a recall due to the Engine Defect.

### B. Defendant

15.    Defendant General Motors LLC is a Delaware limited liability company with its

headquarters and principal place of business in Detroit, Michigan. The sole member and owner of General Motors LLC is General Motors Holdings LLC. General Motors Holdings LLC is a Delaware limited liability company with its principal place of business in the state of Michigan.

16.     Defendant GM, through its various entities and brands, is in the business of designing, manufacturing, distributing, and selling automobiles in the state of Wisconsin and, in particular, within this District.

17.     Defendant GM and/or its agents designed, manufactured, and installed the L87 Engines in the Class Vehicles.

18.     Defendant GM and/or its agents developed and disseminated warranty booklets, owner's manuals, advertisements, and other materials relating to the Class Vehicles.

## **JURISDICTION**

19.     This Court has subject-matter jurisdiction under the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d)(2) and (6) because (i) there are 100 or more class members, (ii) there is an aggregate amount in controversy exceeding $5,000,000 exclusive of interest and costs, and (iii) there is minimal diversity because Plaintiff and Defendant are citizens of different states. This Court also has supplemental jurisdiction over the state law claims under 28 U.S.C. § 1367.

20.     This Court has personal jurisdiction over Defendant because Defendant regularly conducts business within this District and has sufficient minimum contacts with this District such that the exercise of jurisdiction over Defendant is proper. A substantial part of the events giving rise to the claims alleged here occurred in this District.

21.     Venue is proper in this judicial district under 28 USC § 1391 because a substantial part of the events, omissions, and acts giving rise to the claims herein occurred in this District, and Defendant engaged in continuous and systematic business activities within this District.

4

## FACTUAL BACKGROUND

**A.**     **GM Promoted the Safety, Reliability, Quality, and Performance of the Class Vehicles**

22.     GM is one of the most popular automakers in the United States.  As of 2024, GM holds approximately 16.5% of the U.S. auto market, making it one of the top automakers in the country by market share.

23.     GM sells and services vehicles through its network of more than 4,000 dealerships nationwide.

24.     GM marketed and sold hundreds of thousands of Class Vehicles in Wisconsin and throughout the United States, including through their network of authorized GM dealers and service providers.

25.     GM's marketing and promotion materials for the Class Vehicles include promises touting the safety, reliability, quality, and performance of the vehicles, including their L87 Engines.

26.     For example, GM markets Class Vehicles equipped with the L87 Engine as "rugged" and "reliable" workhorses.  GM's marketing targets everyone from "daily driver[ s]" to "hardworking professionals" and "adventure seekers."[2]

27.     Despite these promises relating to the performance and safety of the Class Vehicles, at no point did GM warn consumers of the Engine Defect, which renders all other statements false and misleading.

28.     Plaintiff and each Class Member had sufficient direct dealings with either GM or its agents (including GM authorized dealers) to establish privity of contract between GM and

---

[2] Cassie Gould, *2022 Chevrolet Silverado 1500 LTD: Rugged, Reliable, and Feature-Packed Pickup* (Dec. 24, 2024), available at https://tinyurl.com/34rh6zxb.

5

Plaintiff or the respective Class Member. Nonetheless, privity is not required here because Plaintiff and each Class Member is the intended beneficiaries of GM's implied warranties.

**B.** **GM Also Expressly Warranted the Safety, Reliability, Quality, and Performance of the Class Vehicles**

29.     GM provided express warranties for the Class Vehicles for "repairs, including parts and labor, to correct any defect in materials or workmanship."  For many Class Vehicles, the express warranty terms include three years or 36,000 miles of "bumper to bumper" coverage and five years or 60,000 miles for a Powertrain warranty that covers the engine and related components.[3]

30.     The express warranty terms became part of the basis of the bargain when Plaintiff and the Class Members purchased or leased their Class Vehicles.

31.     With respect to these express warranties, Plaintiff and each Class Member had sufficient direct dealings with either GM or its agents (including GM authorized dealers) to establish privity of contract between GM and Plaintiff or the respective Class Member.

**C.** **GM Sold Class Vehicles with Defective L87 Engines**

**i.** **The Engine Defect**

32.     In 2019, GM introduced the L87 Engine as a replacement of the predecessor unit L86.[4]

33.     GM claims that the L87 Engine is "buil[t] upon the previous 6.2L L86 with Integral components for Automatic Start/Stop capability and available Dynamic Fuel Management (DFM)

---

[3] *See, e.g.*, GMC Vehicle Warranty and Protection Plans, GMC, https://www.gmc.com/owners/warranty-protection-plans (last visited June 26, 2025).

[4] Lewin Day, *GM's 6.2-Liter V8 Is Seizing Up At Highway Speeds And Leaving Owners Stranded*, TheAutopian (Jan. 20, 2025), https://tinyurl.com/4t747p59.

6

for even greater efficiency."[5]

34.     The L87 Engine installed across Class Vehicles shares the same design, parts, and manufacturing process.

35.     Despite GM's consistent marketing and repeated promises of safety, reliability, quality, and performance of the Class Vehicles, the L87 Engine installed in each Class Vehicle contains a defect that poses a dangerous risk to the safety of drivers, passengers, and bystanders. Specifically, L87 Engines suffer from bearing failure that results in either engine seizure or breaching of the engine block by the connecting rod.

36.     Engine bearings are crucial components for the proper functioning of an internal combustion engine.  Engine bearings are metal sleeves encircling the rotating components of the engine, including the connection rods.  The bearings reduce metal-on-metal friction by holding the rotating connecting rods in place on top of a thin layer of oil, which creates a protective buffer between the crankshaft and the connecting rod.  If engine bearings fail, the engine can seize or suffer major internal damage, including a breach of the engine block.

37.     What makes the Engine Defect more dangerous is that there is no detectability of the Engine Defect prior to the failure.  As such, Plaintiff, Class Members, and other drivers and passengers in vehicles with GM's L87 Engine may be in constant risk of harm while operating or while a passenger in a Class Vehicle.

### ii.     The NHTSA Investigation

38.     On January 16, 2025, the NHTSA began investigating engine failures in Class Vehicles.  Some 877,710 vehicles have the same engine and the same problem, according to the

---

[5] *Id.*

7

NHTSA, including the Class Vehicles.[6]

39.     According to an "engine teardown analysis" conducted by the NHTSA, there are two problems with the L87 Engine: (1) rod-bearing damage from sediment on connecting rods and crankshaft-oil galleries; and (2) out of specification crankshaft dimensions and surface finish.

40.     According to the NHTSA, both of these problems with the L87 Engine are attributable to supplier manufacturing and quality issues.

41.     As a result of these defects, L87 Engines are failing at an alarming rate.  Indeed, NHTSA's investigation identified 28,102 field complaints or incidents of which 14,332 involved allegations of loss of propulsion.

42.     This is "a major quality control issue," "leaving many owners stranded with disabled vehicles and no clear timeline for repairs."[7]  Although GM provides express warranties for the Class Vehicles, these cannot undo the harms customer suffer when their truck breaks down, such as missed work and appointments.[8]

43.     Moreover, this is a serious safety issue.  According to the NHTSA, if the engine fails during vehicle operation, the vehicle will lose propulsion, which increases the risk of a crash.

**D.     GM Issues a Complete Stop-Sale and Recall of Class Vehicles and Offers Inadequate Remedies**

44.     Given the severe risks presented by the Engine Defect, on April 28, 2025, GM issued a complete stop-sale and recall of all Class Vehicles.

45.     The scope of the recall is immense, covering nearly 600,000 Class Vehicles with

---

[6] Byron Hurd, *GM's Broken 6.2L V8s Are Stranding Owners for Weeks as Replacement Engine Pipeline Dries Up*, TheDrive.com (Jan. 27, 2025), https://tinyurl.com/42ybuwaw.

[7] *Id.*

[8] *Id.*

8

the L87 Engine.

46.     Pursuant to GM's recall, each of the nearly 600,000 Class Vehicles must be delivered to an authorized dealer for engine inspection.  Depending on the results of the inspection, the Class Vehicle will either be quarantined for future engine repair or replacement—estimated by NHTSA to be required in approximately 3% of cases—or outfitted with a new oil filter and cap as well as an owner's manual insert stating that the vehicle is required to use a higher viscosity motor oil.  According to GM, the thicker viscosity oil offers an increased further level of protection necessary to avoid future engine failures.  Or put differently, without the more viscous oil, the L87 in the Class Vehicle could seize up and fail.

47.     GM's remedies are inadequate for several reasons.  In the vast majority of cases—97%, as estimated by the NHTSA—the remedy is merely an instruction to use a higher viscosity oil.  But inserting a higher viscosity oil does nothing to remedy the out of specification crankshaft dimensions and surface finish.  And, as to the remaining cases, GM does not even offer a putative "remedy," instead merely telling dealers to await further instructions, leaving Class Members either without a vehicle or forced to drive a Class Vehicle that may experience a catastrophic engine failure.  What is more, GM has announced that in the very few cases where the engine of a Class Vehicle will be replaced, GM will simply replace the defective L87 Engine with the same type of defective engine, an L87 Engine.  This is by no means an actual remedy to a serious and potential deadly engine defect affecting hundreds of thousands of consumers.

**E.     GM Had Pre-Sale Knowledge that the L87 Engine Is Dangerous and Defective**

48.     GM had or should have had knowledge of the Engine Defect and the safety risk the Engine Defect poses to Class Vehicle drivers and passengers.

49.     GM is experienced in the design and manufacture of consumer vehicles.  As an

9

experienced manufacturer, GM conducts rigorous pre-sale tests to verity the parts for its vehicles are free from defects and align with their specifications. The parts in the Class Vehicles that constitute the Engine Defect do not align with the required specifications.

50. On information and belief, GM regularly receives warranty data submitted by GM authorized dealers and service departments. Through these warranty submissions, GM was made aware of the Engine Defect and had knowledge of its potential danger.

51. On information and belief, GM regularly receives and responds to customer calls concerning product defects and safety issues. Through these sources, GM was made aware of the Engine Defect and had knowledge of its potential danger.

52. GM also has an obligation to monitor the NHTSA database to identify potential defects in its vehicles, pursuant to the TREAD Act, Pub. L. No. 106-414, 114 Stat. 1800 (2000). Scores of complaints submitted to the NHTSA reveal the prevalence of the Engine Defect in Class Vehicles.

## TOLLING OF STATUTES OF LIMITATION

53. Any applicable statute(s) of limitations have been tolled by GM's knowing and active concealment and denial of the facts alleged herein. Plaintiff and the Class Members could not have reasonably discovered the true nature of the Engine Defect because Defendant did not disclose it and otherwise concealed it. Plaintiff's claims were therefore tolled pursuant to the discovery rule, for fraudulent concealment, and for estoppel.

### A. Discovery Rule

54. The causes of action alleged herein did not accrue until Plaintiff and Class Members discovered that their Class Vehicles contained the Engine Defect.

55. As alleged above, Class Members could not have known about the Engine Defect

10

in their Class Vehicles. GM did not disclose the Engine Defect prior to their purchase of a Class Vehicle. GM also marketed and promoted the Class Vehicles as safe, of high quality, and reliable.

56. Plaintiff and Class Members also could not have discovered the Engine Defect through the exercise of reasonable diligence.

57. For these reasons, all applicable statutes of limitations have been tolled by operation of the discovery rule with respect to the claims alleged by Plaintiff and the Class Members.

**B. Fraudulent Concealment**

58. As the manufacturer, distributor, seller, and/or warrantor of the Class Vehicles, GM was under a continuous duty to disclose to Class Members the existence of the Engine Defect.

59. GM was and remains under a continuing duty to disclose to Plaintiff and the Class Members the true character, quality, and nature of the Class Vehicles, that the Engine Defect may result in engine failure, among other safety risks, that the Class Vehicles will require costly repairs, pose safety risks, cause damage to their personal property, and diminish the resale value of the Class Vehicles.

60. GM recklessly disregarded the true nature, quality, and character of the Class Vehicles by failing to disclose the existence of the Engine Defect.

61. Class Members were not at fault for failing to discover the existence of the Engine Defect present in their Class Vehicles.

62. Due to GM's failure to disclose the Engine Defect, all applicable statutes of limitation have been tolled.

**C. Estoppel**

63. GM was, and remains, under a continuous duty to disclose to Plaintiff and the Class Members the true character, quality, and nature of the Class Vehicles.

11

64.    GM failed to disclose the existence of the Engine Defect and actively concealed the true character, quality, and nature of the Class Vehicles.

65.    GM made representations about the quality and reliability of the Class Vehicles that were inconsistent with the presence of the Engine Defect, which Plaintiff and the Class Members reasonably relied on.

66.    Based on the foregoing, GM is estopped from relying on any statutes of limitation in defense of this action.

## CLASS ALLEGATIONS

67.    Plaintiff brings this lawsuit under Federal Rule of Civil Procedure 23(a), (b)(1), (b)(2), (b)(3), and (c)(4) on behalf of himself and all others similarly situated (collectively, the "Class Members") as members of the following Nationwide Class:

> All individuals or entities who purchased or leased a Class Vehicle in the United States.

68.    Plaintiff also proposes the following Wisconsin Subclass:

> All individuals or entities who purchased or leased a Class Vehicle in Wisconsin.

69.    The Nationwide Class and the Wisconsin Class are referred hereto as Class. The following persons and entities are excluded from the Class: (1) any Judge or Magistrate presiding over this action, members of their staffs (including judicial clerks), and members of their families; (2) Defendant, Defendant's subsidiaries, parents, successors, predecessors, and any entity in which the Defendant or its parents have a controlling interest, and their current or former employees, officers and directors; (3) persons who properly execute and file a timely request for exclusion from the Class; (4) persons whose claims in this matter have been finally adjudicated on the merits or otherwise released; (5) Plaintiff's counsel and Defendant's counsel, and non-attorney employees of their firms; and (6) the legal representatives, successors, and assigns of any such

12

excluded persons.

70.     This action is brought and may be properly maintained as a class action.  There is a well-defined community of interests in this litigation and Class Members are easily ascertainable.

71.     *Numerosity.* The Class Members are so numerous that individual joinder of all members is impracticable, and the disposition of the claims of the members of all Class in a single action will provide substantial benefits to the parties and the Court.

72.     *Typicality.* Plaintiff's claims are typical of the class. Like every other class member, Plaintiff bought a Class Vehicle that he would not have purchased, or would have paid substantially less for, had he known of the Engine Defect.

73.     *Adequacy.* Plaintiff will fairly and adequately protect the interests of the class.  He has no interests antagonistic to the interests of other Class Members and is committed to vigorously prosecuting this case.

74.     Plaintiff has retained competent counsel experienced in prosecuting class actions involving defective consumer products.

75.     *Predominance.* Common class-wide questions of law and fact predominate over any questions that may affect only individual Class Members because GM has acted on grounds generally applicable to the Class as a whole.

76.     Questions of law and fact common to the class include:

   a.   whether the Class Vehicles were defective at the time of sale;

   b.   whether the Engine Defect substantially impairs the Class Vehicles' value;

   c.   whether GM knew of the Engine Defect but nevertheless continued to promote and sell the Class Vehicles without disclosing the Engine Defect and its consequences to consumers;

   d.   whether a reasonable consumer would consider the Engine Defect and

13

its consequences material;

e. whether GM carried out the discretion it afforded itself under its warranty in good faith;

f. whether GM breached express and implied warranties for the Class Vehicles;

g. whether Class Members overpaid for their vehicles in light of the Engine Defect;

h. whether Class Members are entitled to equitable relief, including restitution or injunctive relief; and

i. whether Class Members are entitled to money damages or compensatory relief, and if so, in what amount.

77.    ***Superiority.*** A class action is superior to all other available methods for the fair and efficient adjudication of this controversy. Because the amount of each individual Class Member's claim is small relative to the complexity of the litigation, and because of GM's financial resources, no Class Member is likely to pursue legal redress individually for the violations detailed in this complaint. Individualized litigation would significantly increase the delay and expense to all parties, and to the Court, and would create the potential for inconsistent and contradictory rulings. By contrast, a class action presents fewer management difficulties, allows claims to be heard which would otherwise go unheard because of the expense of bringing individual lawsuits, and provides the benefits of adjudication, economies of scale, and comprehensive supervision by a single court.

78.    Class certification is also appropriate under Rule 23 because:

a. the prosecution of separate actions by the individual Class Members would create a risk of inconsistent or varying adjudications with respect to individual Class Members, which would establish incompatible standards of conduct for GM;

b. the prosecution of separate actions by individual Class Members would create a risk of adjudications that would, as a practical matter, be dispositive of the interests of other Class Members and not parties to the adjudications, or would substantially impair or impede their ability to

14

protect their interests;

c.   GM acted or refused to act on grounds generally applicable to the class, thereby making appropriate financial injunctive relief for the Class as a whole; and

d.   the Class Members' claims include common issues that are appropriate for certification.

## CAUSES OF ACTION

### COUNT I
### Violation of the Magnuson-Moss Warranty Act, 15 U.S.C. §§ 2301, *et seq.*
### *(On Behalf of Plaintiff and the Class)*

79.    Plaintiff incorporates by reference the allegations contained in the paragraphs above as if set forth fully herein.

80.    This Court has jurisdiction to decide claims brought under 15 U.S.C. § 2301 by virtue of 28 USC § 1332(a)–(d).

81.    The Class Vehicles are "consumer products" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(3).

82.    Plaintiff and the Class Members are "consumers" because they are persons entitled under applicable state law to enforce against the warrantor the obligations of its implied warranties.

83.    GM is a "supplier" and "warrantor" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(4)-(5).

84.    15 U.S.C. § 2310(d)(1) provides a cause of action for any consumer who is damaged by the failure of a warrantor to comply with an implied warranty.

85.    GM provided Plaintiff and the Class Members with an implied warranty of merchantability in connection with the purchase or lease of the Class Vehicles that is an "implied warranty" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(7).  As part of that implied warranty of merchantability, GM warranted that the Class Vehicles were fit for

15

their ordinary purpose as safe passenger motor vehicles, would pass without objection in the trade as designed, manufactured, and marketed, and were adequately contained, packaged, and labeled.

86.     GM breached its implied warranties, as described herein, and is therefore liable to Plaintiff and the other Class Members under 15 U.S.C. § 2301(d)(1). Without limitation, the Class Vehicles all suffer from the common Engine Defect, which creates an unreasonable risk of death, serious bodily harm, and property damage to owners and lessees of the Class Vehicles. The Engine Defect rendered the Class Vehicles unmerchantable and unfit for their ordinary use of driving when they were sold or leased, and at all times thereafter.

87.     As alleged herein, in its capacity as a warrantor, GM knew or should have known about the Engine Defect prior to the sale of the Class Vehicles to Plaintiff and each Class Member.

88.     Any effort by GM to limit the implied warranties that would exclude coverage for Class Vehicles is substantively unconscionable, procedurally unconscionable, or both. Procedurally, there was unequal bargaining power between GM and Plaintiff and each Class Member because, at the time of purchase or lease, Plaintiff and each Class Member had no other options for purchasing warranty coverage other than directly from GM. Substantively, GM knew or should have known that the Class Vehicles were defective and that the Class Vehicles suffered from a safety defect that placed drivers and passengers of the Class Vehicles at risk when the Class Vehicles were used as intended long before Plaintiff and the Class Members knew or should have known about the same. GM failed to disclose this defect to Plaintiff and Class Members.

89.     Plaintiff and the Class Members have had sufficient direct dealings with GM, its agents, or both to establish privity of contract. Even so, privity is not needed here because Plaintiff and the Class Members are intended third-party beneficiaries of contracts between GM and its dealers. The dealers were not intended to be the ultimate consumers of the Class Vehicles and

16

have no rights under the warranty agreements provided with the Class Vehicles. The warranty agreements were, after all, designed for and intended to benefit consumers. In any event, privity is not needed because the Class Vehicles are dangerous instrumentalities.

90.     Under 15 U.S.C. § 2310(e), Plaintiff and the Class Members are entitled to bring this class action and are not required to give GM notice or opportunity to cure until such time as the Court determines the representative capacity of Plaintiff under Rule 23 of the Federal Rules of Civil Procedure.

91.     Plaintiff and the Class Members would suffer economic hardship if they returned their Class Vehicles but did not receive the return of all payments they have made. Because GM will not acknowledge any revocation of acceptance and immediately return any payments made, neither Plaintiff nor any Class Member has re-accepted his or her Class Vehicle by retaining it.

92.     The amount in controversy for Plaintiff and the Class Members' individual claims meets or exceeds $25. The amount in controversy of this action exceeds $50,000, exclusive of interest and costs, computed on the basis of all claims to be determined in this lawsuit. Plaintiff, individually and on behalf of all other Class Members, seeks all damages permitted by law, including diminution in value of their Class Vehicles, in an amount to be proven at trial. In addition, under 15 U.S.C. § 2310(d)(2), Plaintiff and the Class Members are entitled to recover their aggregate costs and expenses, including attorneys' fees based on actual time spent, determined by the Court to have been reasonably incurred by Plaintiff and the Class in connection with the commencement and prosecution of this action.

**COUNT II**
**BREACH OF EXPRESS WARRANTY**
***(On Behalf of Plaintiff and the Class)***

93.     Plaintiff incorporates by reference the allegations contained in the paragraphs above as if set forth fully herein.

17

94.     Plaintiff brings this claim individually and on behalf of the Class.

95.     GM is and was at all relevant times a "merchant" with respect to motor vehicles under Wis. Stat. §§ 402.104(3) and 411.103(3)(k), and a "seller" of motor vehicles under Wis. Stat. § 402.103(1)(d).

96.     With respect to leases, GM is and was at all relevant times a "lessor" of motor vehicles under Wis. Stat. § 411.103(1)(p).

97.     The Class Vehicles are and were at all relevant times "goods" within the meaning of Wis. Stat. §§ 402.105(1)(c) and 411.103(1)(h).

98.     GM created and extended to consumers an express warranty in connection with every sale of a Class Vehicle by GM or any of its agents, including any of its authorized dealers.

99.     GM provides an express warranty for Class Vehicles for up to 5 years or 60,000 miles.

100.    As further stated in the express warranty, "[t]he warranty covers repairs to correct any vehicle defect, not slight noise, vibrations, or other normal characteristics of the vehicle related to materials or workmanship occurring during the warranty period."

101.    As further stated in the express warranty, repairs, including towing, parts, and labor, will be made at no charge.

102.    GM's express warranty formed the basis of the bargain that was reached when Plaintiff and the Class Members purchased or leased their Class Vehicles.

103.    GM breached the express warranty to repair "any defect" by failing to repair the Defective Engine.

104.    Further, if the express warranty is construed to be limited to vehicle defects related to materials or workmanship, GM has breached the express warranty.

18

105.     GM has not repaired, and has been unable to repair, the L87 Engine in the Class Vehicles.

106.     GM's Class Vehicles were defective at the time of sale and at all times thereafter.

107.     The Engine Defect rendered the Class Vehicles unsuitable for their primary purpose.

108.     Plaintiff and other Class Members used their Class Vehicles in a manner consistent with each vehicle's operating instructions.

109.     As described herein, GM was on actual notice of the defective nature of the Class Vehicles prior to each sale and lease, including as a result of the NHTSA's investigation of the Engine Defect.

110.     GM's failure to provide Plaintiff and other Class Members with a non-defective replacement vehicle or a refund of the purchase price departs from commercially reasonable behavior and violated Plaintiff's and other Class Members' objectively reasonable expectations arising from the express warranty.

111.     The express warranty fails in its essential purpose because the contractual remedy is insufficient to make Plaintiff and the Class Members whole because GM failed or has refused to adequately provide the promised remedies in a reasonable time.

112.     Accordingly, recovery by Plaintiff and the Class Members is not limited to the express warranty of repair to parts defective in materials and workmanship, and Plaintiff, individually and on behalf of the Class Members, seeks all remedies as allowed by law.

113.     Moreover, much of the damage flowing from the Class Vehicles cannot be resolved through the limited remedy of repairs, as those incidental and consequential damages have already been suffered due to GM's improper conduct as alleged herein, and due to its failure and/or

continued failure to provide such limited remedy within a reasonable time, and any limitation on Plaintiff and the Class Members' remedies would be insufficient to make Plaintiff and Class Members whole.

114.    Any attempt by GM to disclaim or limit its express warranties by way of consumers would be inappropriate under the circumstances.  Any asserted limitation is unconscionable and unenforceable because GM knowingly sold a defective product without informing consumers and failed to honor its express warranty.

115.    As a direct and proximate result of GM's breaches of express warranty, Plaintiff and Class Members have been damaged in an amount to be proven at trial.

**COUNT III**
**BREACH OF IMPLIED WARRANTY**
***(On Behalf of Plaintiff and the Class)***

116.    Plaintiff incorporates by reference the allegations contained in the paragraphs above as if set forth fully herein.

117.    Plaintiff makes this claim individually and on behalf of the Class.

118.    GM is and was at all relevant times a "merchant" with respect to motor vehicles under Wis. Stat. §§ 402.104(3) and 411.103(3)(k), and a "seller" of motor vehicles under Wis. Stat. § 402.103(1)(d).

119.    With respect to leases, GM is and was at all relevant times a "lessor" of motor vehicles under Wis. Stat. § 411.103(1)(p).

120.    The Class Vehicles are and were at all times "goods" within the meaning of Wis. Stat. §§ 402.105(1)(c) and 411.103(1)(h).

121.    A warranty that the Class Vehicles were in merchantable condition and fit for the ordinary purpose for which vehicles are used is implied by law pursuant to Wis. Stat. §§ 402.314 and 411.212.

20

122. GM implicitly warranted that the Class Vehicles were of merchantable quality and fit for their ordinary and intended use as vehicles. Vehicles whose engines seize or fail altogether are neither merchantable nor fit for their intended use.

123. The defects in the L87 Engine and the Class Vehicles existed at the time of sale.

124. Plaintiff's vehicle is currently or was at some point not drivable because of the its defective L87 Engine.

125. Plaintiff and Class Members either bought their Class Vehicles directly from GM, who manufactured the Class Vehicles, or from its authorized dealers.

126. GM breached the implied warranty of merchantability in connection with its sale and distribution of the Class Vehicles. At the point of sale, the Class Vehicles contained a latent manufacturing defect whose manifestation renders the product unfit for its ordinary and intended purpose—driving. The defect existed when the Class Vehicles left GM's possession and is substantially certain to manifest.

127. Had Plaintiff and Class Members known of the Engine Defect in the Class Vehicles, they would not have purchased or would have paid significantly less for them.

128. Plaintiff and the Class Members furnished GM with an opportunity to cure its breach of warranty and otherwise complied with any and all obligations under the implied warranty of merchantability. Despite knowing of the Engine Defect before or concurrently with the release of the Class Vehicles, GM has refused to provide Plaintiff and other Class Members with appropriate warranty relief, leaving them without the functional product they thought they were buying.

129. Moreover, providing additional notice to GM now is futile because GM has continually failed to provide adequate remedies to Plaintiff and Class Members.

130.     Based upon these defects, GM has failed to meet the expectations of a reasonable consumer.

131.     As a direct and proximate result of GM's breach of the implied warranty of merchantability, Plaintiff and other Class Members have sustained damages in an amount to be determined at trial.

## COUNT IV
### UNJUST ENRICHMENT
### *(On Behalf of Plaintiff and the Class)*

132.     Plaintiff incorporates by reference the allegations contained in the paragraphs above as if set forth fully herein.

133.     Plaintiff and the Class Members make this claim in the alternative to any contract-based claims.

134.     GM has received and retained a benefit from leasing and selling Class Vehicles to Plaintiff and Class Members and inequity has resulted.

135.     GM has benefitted from selling and leasing the Class Vehicles, for more than they were worth because of their concealed defects, at a profit, and Plaintiff and Class Members have overpaid for the Class Vehicles and have been forced to pay other costs.

136.     It is inequitable for GM to retain these benefits.

137.     Plaintiff and other Class Members were unaware of the defects in their Class Vehicles and did not benefit from GM's conduct.

138.     GM knowingly accepted the benefits of its unjust conduct.

139.     As a result of GM's conduct, the amount of its unjust enrichment should be disgorged and returned to Plaintiff and the other Class Members in an amount to be proven at trial.

## COUNT V
### VIOLATIONS OF THE WISCONSIN DECEPTIVE TRADE PRACTICES ACT

22

**Wis. Stat. § 100.18**
*(On Behalf of Plaintiff and the Wisconsin Class)*

140. Plaintiff incorporates by reference the allegations contained in the paragraphs above as if set forth fully herein.

141. Plaintiff brings this claim individually and on behalf of the Class.

142. GM is a "person, firm, corporation or association" within the meaning of Wis. Stat. § 100.18(1).

143. GM's authorized dealers are each an "agent or employee" of a "person, firm, corporation or association," namely, GM, within the meaning of Wis. Stat. § 100.18(1).

144. Plaintiff and Class Members are members of "the public" within the meaning of Wis. Stat. § 100.18(1). Plaintiff and Class Members purchased or leased one or more Class Vehicles in Wisconsin.

145. The Wisconsin Deceptive Trade Practices Act ("Wisconsin DTPA") prohibits an "assertion, representation or statement of fact which is untrue, deceptive or misleading." Wis. Stat. § 100.18(1). By systematically concealing the defects in the Class Vehicles, GM's conduct violated the Wisconsin DTPA.

146. GM's actions, as set forth above, occurred in the conduct of trade or commerce.

147. In the course of GM's business, GM willfully failed to disclose and actively concealed that the L87 Engine in each Class Vehicle contains defects that cause sudden and catastrophic engine failure. GM affirmatively marketed the Class Vehicles as "rugged" and "reliable" workhorses suitable for "hardworking professionals" and "adventure seekers." A reasonable consumer would expect the Class Vehicles to have reliable engines that would not fail catastrophically during normal use. Accordingly, GM engaged in prohibited acts with affirmative assertions, representations, or statements of facts that are false, deceptive, or misleading with the

23

intent to induce an obligation. GM engaged in unfair and deceptive business practices in violation of the Wisconsin DTPA.

148.    In purchasing or leasing the Class Vehicles, Plaintiff and the other Class Members were deceived by GM's failure to disclose the Engine Defect.

149.    Plaintiff and Class Members reasonably relied upon GM's false misrepresentations and had no way of knowing that GM's representations were false and gravely misleading. As alleged herein, GM engaged in extremely sophisticated methods of deception. Plaintiff and Class Members did not, and could not, unravel GM's deception on their own, as the engine's internal components are not visible or accessible to consumers prior to purchase or lease.

150.    GM's unfair and deceptive acts or practices, involving fraud, misrepresentation, and the suppression or omission of material facts, were likely to and did in fact deceive reasonable consumers.

151.    GM intentionally and knowingly misrepresented material facts regarding the Class Vehicles with intent to mislead Plaintiff and the Class Members.

152.    GM knew or should have known that its conduct violated the Wisconsin DTPA.

153.    GM owed Plaintiff and the Class a duty to disclose the truth about the defective L87 Engine because GM: (1) possessed exclusive knowledge of the design and manufacturing defects in the L87 Engine; (2) intentionally concealed the foregoing from Plaintiff and the Class; and/or (3) made incomplete representations regarding the quality, reliability, and durability of the Class Vehicles, while purposefully withholding material facts from Plaintiff and the Class that contradicted these representations.

154.    Due to GM's specific and superior knowledge of the Engine Defect, which causes catastrophic failure, its false representations regarding the reliability of the Class Vehicles, and

Plaintiff's and other Class Members' reliance on these material representations, GM had a duty to disclose to Plaintiff and other Class Members that their vehicles contained defective engines prone to sudden failure, that the defect poses safety risks, and that Class Members would be required to bear significant costs and loss of use. Having volunteered to provide information to Plaintiff and Class Members, GM had a duty to disclose not just the partial truth, but the entire truth. These omitted and concealed facts were material because they directly impact the value and safety of the Class Vehicles purchased or leased by Plaintiff and Class Members. Reliability, durability, and safety are material concerns to vehicle consumers.

155. GM's conduct proximately caused injuries to Plaintiff and the other Class Members.

156. Plaintiff and the other Class Members were injured and suffered ascertainable loss, injury in fact, and/or actual damage as a proximate result of GM's conduct in that Plaintiff and the other Class Members overpaid for their Class Vehicles and did not receive the benefit of their bargain, and their Class Vehicles have suffered a diminution in value. These injuries are the direct and natural consequence of GM's misrepresentations, fraud, deceptive practices, and omissions.

157. GM's violations present a continuing risk to Plaintiff as well as to the general public; indeed, GM's widespread, unlawful acts and practices complained of herein affect the public interest.

158. Plaintiff and Class Members seek actual damages, court costs, attorneys' fees, and other relief provided for under Wis. Stat. § 100.18(11)(b)(2). Because GM's conduct was committed knowingly and/or intentionally, Plaintiff and Class Members are entitled to treble damages and any other such relief necessary to deter GM's unlawful conduct in the future.

## **PRAYER FOR RELIEF**

WHEREFORE Plaintiff Keefe John, individually and on behalf of the Class, respectfully requests judgment against Defendant General Motors LLC and that this Honorable Court enter an Order:

A.    Declaring that this action is a proper class action, certifying the Class, designating Plaintiff as class representative, and appointing Plaintiff's attorneys as class counsel;

B.    Requiring GM to pay damages under the Magnuson-Moss Warranty Act, including diminished value and loss of use;

C.    Requiring GM to pay damages for breach of implied warranty, including all incidental and consequential damages;

D.    Requiring GM to pay damages for breach of implied warranty of merchantability;

E.    Requiring GM to pay damages for unjust enrichment and disgorgement of profits;

F.    Requiring GM to pay actual damages under Wis. Stat. § 100.18 for violations of the Wisconsin Deceptive Trade Practices Act;

G.    Requiring GM to pay treble damages under Wis. Stat. § 100.18(11)(b)(2) for knowing and intentional violations of the Wisconsin DTPA;

H.    Requiring GM to pay attorneys' fees and costs under Wisconsin law and applicable federal statutes;

I.    Awarding appropriate injunctive relief, including recall and adequate repair or replacement of defective engines;

J.      Awarding all other relief, including equitable relief, as the Court deems just and

proper.

## JURY DEMAND

Plaintiff and the Class Members demand a jury trial.


Dated: June 27, 2025                          Respectfully Submitted,

                                              */s/ David S. Almeida*
                                              David S. Almeida (WI Bar # 1086050)
                                              Elena A. Belov*
                                              **ALMEIDA LAW GROUP LLC**
                                              849 W. Webster Avenue
                                              Chicago, Illinois 60614
                                              Tel.: (708) 437-6476
                                              david@almeidalawgroup.com
                                              elena@almeidalawgroup.com

                                              *Attorneys for Plaintiff and the Class*

                                              *\* Pro Hac Vice application forthcoming*